IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
Clara Jane Schwartz,          )
          Petitioner,         )
                              )
                              )     1:09cv98  (GBL/JFA)
                              )
Gene M. Johnson,              )
          Respondent.         )
                              )
```

### Memorandum Opinion and Order

THIS MATTER is before the Court on Petitioner Clara
Jane Schwartz's Petition for Writ of Habeas Corpus for
Prisoner in State Custody, pursuant to 28 U.S.C. § 2254.
This case concerns the constitutionality of Ms. Schwartz's
conviction in the Virginia Circuit Court for Loudoun County
for murder, conspiracy to commit murder, and two counts of
solicitation to commit the murder of her father, Dr. Robert
Schwartz.  The issues before the Court are whether Ms.
Schwartz was deprived of her 6th Amendment right to
effective assistance of counsel at trial based on her
defense counsel's: 1) failure to timely and properly object
to the introduction into evidence of Mr. Hulbert's written
confession and other inculpatory statements (claim A); and
2) failure to request jury instructions on the lesser
included offenses of second degree murder and manslaughter
and failure to argue alternative defenses based on the

facts presented (claim B).  Ms. Schwartz requests an
evidentiary hearing to resolve the factual dispute as to
whether trial counsel's performance was informed and
reasonable.  The Court denies Ms. Schwartz request for an
evidentiary hearing because there are no factual disputes
to resolve.  The Court finds that Ms. Schwartz has not
demonstrated that the Supreme Court of Virginia applied the
*Strickland* standard unreasonably or based its decision on
an unreasonable determination of the facts because this
Court has reviewed the records and determined that the
court's analysis is reasonable on both prongs.


### I.    BACKGROUND

On February 19, 2003, Ms. Schwartz was convicted in
the Circuit Court of Loudoun County of murder, conspiracy,
and two counts of solicitation to commit murder and
sentenced to forty-eight years of imprisonment

In 2001, Ms. Schwartz attended James Madison
University as a sophomore.  (Trial Tr. 224.)  Ms. Schwartz
lived in Loudoun County with her father, Dr. Robert
Schwartz prior to going to college.  (Trial Tr. 204-05.)
The Commonwealth presented testimony from Ms. Schwartz
friends, Mr. Patrick House and Ms. Kate Inglis, that Ms.

2

Schwartz hated her father, Dr. Schwartz, told her that her father tried to poison her, that she wished he were dead, that he tried to drown her in a pool, that he attempted to molest and kill her, and that she stood to inherit hundred of thousands of dollars upon his death.  (Trial Tr. 224, 306-08, 313, 333, 421, 424 430, 498, 553, 714.)  In August 2001, Ms. Schwartz began dating Mr. House, and made statements to Mr. House about her desire for him to kill her father.  (Trial Tr. 311, 322, 417-18, 427-30.)  Ms. Schwartz gave Mr. House a book containing information about poisoning and her collection of journals chronicling the abuse she endured from her father over the years.  (Trial Tr. 421, 427.)  Mr. House testified that Ms. Schwartz and he had multiple conversations about when he would kill Ms. Schwartz's father.  (Trial Tr. 430-32.)

      In September 2001, Ms. Schwartz, Mr. House, Ms. Inglis, and Mr. Michael Pfohl met Mr. Kyle Hulbert at a Renaissance Fair in Maryland.  (Trial Tr. 322-23.)  Mr. Hulbert was carrying a two-foot sword and dressed in a cat costume.  (Trial Tr. 323.)  Ms. Schwartz and her friends became friends with Mr. Hulbert.  Ms. Schwartz told Mr. Hulbert that her father had abused her and continued to abuse her.  (Trial Tr. 286-87.)  Ms. Schwartz told Mr. Hulbert that she and her father were planning on going to

3

the Virgin Islands and her father was going to make sure she never came back.  (Trial Tr. 288.)

    In November 2001 Mr. Hulbert, Ms. Inglis, and Mr. Pfohl visited Ms. Schwartz at college where she further told them how her father abused and poisoned her.  (Trial Tr. 332-33.)  Ms. Schwartz showed Mr. Hulbert her journals, picking out specific pages for him to read.  (Trial Tr. 332-33.)  Ms. Schwartz told her friends that she would inherit a substantial amount of money from her father when he died, that she was afraid her father would cut her out of the will, and that she wanted to take a semester off from school, but that her father opposed it.  (Trial Tr. 313, 424-27.)  At the end of the weekend visit, Ms. Schwartz said to Ms. Inglis, "maybe he [Mr. Hulbert] can help me with my father," and commented that, if her father died while she was in college, she would take a semester off.  (Trial Tr. 350.)

    After that visit, Mr. Hulbert and Ms. Schwartz began to exchange instant messages and to speak on the telephone almost daily.  (Trial Tr. 710.)  Ms. Schwartz arranged for Ms. Inglis to drop off Mr. Hulbert to camp out in the woods surrounding the Schwartz family home during Thanksgiving weekend in 2001.  (Trial Tr. 338.)  The next day, Mr. Hulbert visited the Schwartz's residence and introduced

4

himself to Dr. Schwartz and Ms. Schwartz sister Michelle Schwartz. (Trial Tr. 227.) Mr. Hulbert wore a long black trench coat and showed them his sword. (Trial Tr. 226-28.) Soon after that visit, Mr. Hulbert requested that Ms. Schwartz send him $60 for gas, a "do-rag", or head covering, and gloves so that he would not leave any hairs or evidence at the scene. (Trial Tr. 487.) Ms. Schwartz sent Mr. Hulbert the $60 check via overnight delivery. (Trial Tr. 340-41, 687-99.) On December 7, 2001, Mr. Hulbert, Ms. Inglis, and Mr. Pfohl used the check to open a bank account for Mr. Hulbert at First Virginia Bank. (Trial Tr. 340-41, 686-87.) On December 8, 2001, Mr. Pfohl and Ms. Inglis gave Mr. Hulbert a ride back to the area near Dr. Schwartz's home near the same location where they had previously camped. (Trial Tr. 288, 343.) Mr. Hulbert had his sword strapped to his side. (Tr. Tr. 344.) As Mr. Hulbert began to walk in the direction of Dr. Schwartz's home, he pulled his sword out of its sheath. (Trial Tr. 343.) Mr. Hulbert stabbed Dr. Schwartz over 30 times with the sword. (Trial Tr. 680-81.) When Mr. Hulbert returned to the car he told Mr. Pfohl and Ms. Inglis that he ran him [Dr. Schwartz] through with his sword. (Trial Tr. 345.) On December 9, 2001, Mr. Hulbert called Ms. Schwartz, and told her that he had killed her father. (Trial Tr. 351.)

The next day a neighbor found the victim's body.   (Trial
Tr. 207-08.)   That evening, Loudoun County Investigator
Greg Locke traveled to James Madison University to notify
Ms. Schwartz and her sister Michelle of their father's
death.   (Trial Tr. 470.)   Ms. Schwartz provided
investigator Locke with information about Mr. Hulbert, Mr.
Pfohl, and Ms. Inglis.   (Trial Tr. 475-76.)   On December
11, 2001, Mr. Hulbert was arrested.   (Trial Tr. 300, 302.)
At the time of his arrest Mr. Hulbert was carrying a three-
page typewritten document that Ms. Schwartz had prepared
detailing Dr. Schwartz's alleged abuse of her.   (Trial Tr.
204-05 299, 303, Commonwealth Ex. 35.)   Authorities found
Mr. Hulbert's sword at the home of Ms. Inglis and Mr.
Pfohl.   (Trial Tr. 293-94.)   On December 12, 2001, Ms.
Schwartz told investigators that she knew Mr. Hulbert was
going to kill her father.   (Trial Tr. 482-83.)   The next
day, investigators searched her dorm room and found several
journals that were identical to the ones found on Mr.
Hulbert at the time of his arrest.   (Trial Tr. 504-05, 628,
632-33, 641.)   On February 1, 2002, Ms. Schwartz was
arrested for the murder of Dr. Schwartz.   (Trial Tr. 720.)
After her arrest, Ms. Schwartz admitted to fellow inmate
Tammie Fitts that her friend Mr. Hulbert had killed her
father with a ninja sword.   (Trial Tr. 720-22.)   Ms.

6

Schwartz also told Ms. Fitts that the plan was for Mr. Hulbert to take the blame for the murder because he was mentally ill.  (Trial Tr. 722-23.)

Pre-trial, on June 28, 2002, the Commonwealth filed a motion seeking a ruling on the admissibility of Mr. Hulbert's written confession.  The state habeas court noted that counsel filed a 12-page, "very detailed" and "scholarly" memorandum opposing the Commonwealth's use of Mr. Hulbert's written confession.  (Tr. Mar. 14, 2008 at 83, 86.)  At a hearing on July 10, 2002, defense counsel withdrew their objection to the admission of the statement to allow the admission of the full unredacted confession pursuant to a stipulation with the Commonwealth personally signed by Ms. Schwartz.  (Mot. Hr'g Jul. 10, 2002 at 6.) Ms. Schwartz stipulated to the admission of the written confession despite the condition that Mr. Hulbert would not testify and be subject to cross-examination at trial. (Trial Tr. 282-83.)  The court noted that the Commonwealth had not satisfied *Lilly v. Virginia*[1], which stands for the proposition that a nontestifying accomplice offering statements against the penal interest of the defendant must be allowed to be confronted by the defendant pursuant to

---

[1] *Lilly v. Virginia*, 527 U.S. 116 (1999)

the confrontation clause of the 6th Amendment, but there was no objection to the admission of the written confession. (*Id.*) Mr. Hulbert's written confession was admitted at trial. (*Id.*) At a hearing on July 24, 2002, counsel advised the trial court that the defense needed mental health records for Mr. Hulbert to attempt to demonstrate that Mr. Hulbert misunderstood Ms. Schwartz. (Tr. Hr'g Jul. 24, 2002 at 14.) Defense counsel sought to demonstrate Mr. Hulbert's actions as those of a psychotic individual throughout the trial. (Trial Tr. 193-96, 775-800, 801-43, 842-49.) The court instructed the jury in Instruction 14A that if the jury had a reasonable doubt that Mr. Hulbert had the "mental capacity to understand the nature and consequences of any agreement to commit a crime at the time of the agreement," the jury must acquit Ms. Schwartz of the conspiracy. (Jury Instruction 14A.) Throughout the closing argument, defense counsel argued extensively about Mr. Hulbert's mental illness. (Trial Tr. 974, 980-83, 990-92.) On February 19, 2003, Ms. Schwartz was convicted in the Circuit Court of Loudoun County for murder, conspiracy, and two counts of solicitation to commit murder and sentenced to forty-eight years of imprisonment. Ms. Schwartz's direct appeals were denied. The Virginia Court of Appeals denied her appeal on April

8

19, 2005. *Schwartz v. Johnson*, R. No. 0577-03-4 (Va. Ct. App. Apr. 19, 2005.)  The Virginia Supreme Court denied Ms. Schwartz's appeal on October 6, 2005. *Schwartz v. Johnson*, R. No. 051072 (Va. Oct. 6, 2005.)  On October 6, 2006, Ms. Schwartz filed a petition for a writ of habeas corpus in the Circuit Court for Loudoun County challenging her conviction two grounds. *Schwartz v. Johnson*, R. No. 42813 (Oct. 6, 2005.) Specifically, Ms. Schwartz alleged that: (1) she was deprived of her 6th Amendment right to effective assistance of counsel at trial because her defense counsel failed to timely and properly object to the admission into evidence Mr. Hulbert's written confession and other inculpatory statements; and (2) because her defense counsel failed to request jury instructions on the lesser included offenses of second degree murder and manslaughter and failed to argue alternative defenses based on the facts presented.

On March 14, 2008, a habeas corpus motions hearing was held.  At the conclusion of the hearing, the court ruled that the habeas petition should be denied.  The order of dismissal was entered April 23, 2008.  Ms. Schwartz appealed to the Virginia Supreme Court, which denied the petition for appeal by order dated November 3,

2008. *Schwartz v. Johnson*, R. No. 081416 (Va. Nov. 3, 2008.)

## II. DISCUSSION

### A. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle

from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Importantly, this standard of reasonableness is an objective one. *Id.* at 410.

**B. Analysis**

As a general rule, a petitioner must first exhaust her claims in state court because exhaustion is a matter of comity to the state courts; failure to exhaust requires dismissal from federal court so that the petitioner may present claims to the state courts. *See* 28 U.S.C. § 2254(b); *Granberry v. Greer*, 481 U.S. 129, 134 (1987); *Rose v. Lundy*, 455 U.S. 509, 515-19 (1982). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Thus, petitioner must present the same factual and legal claims raised in the instant petition to the Supreme Court of Virginia either by way of (1) a direct appeal, (2) a state habeas corpus petition, or (3) an appeal from a circuit court's denial of a state habeas petition. Ms. Schwartz has exhausted her remedies in state court on all issues presented herein by presenting the same issues in the state

11

habeas case filed in the Loudoun County Circuit Court and appealed to the Virginia Supreme Court.

This petition is timely filed pursuant to 28 U.S.C. § 2254. Ms. Schwartz's direct appeal to the Virginia Supreme Court concluded on October 6, 2005. Ms. Schwartz had ninety days from that date to seek review on direct appeal to the United States Supreme Court, and those ninety days would not toll against the federal one-year statute to bring the § 2254 petition. *See Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir, 2000). On October 6, 2006, the state habeas petition was filed in the Loudoun County Circuit Court, which is one year from the date the direct appeal concluded in the Virginia Supreme Court. Ms. Schwartz's state habeas case was pending until the Virginia Supreme Court denied the habeas corpus appeal by order dated November 3, 2008. Ms. Schwartz filed her petition for writ of habeas corpus on February 2, 2009, ninety days from November 3, 2008. This petition is therefore timely filed and is the only motion for this petition in federal court.

The foregoing determination which was the last reasoned sate court decision, is imputed to the Supreme Court of Virginia, which refused further appeal without explanation. *See Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

The Court finds that both of Ms. Schwartz's claims of ineffective assistance of trial counsel, failure to timely and properly object to the introduction into evidence Mr. Hulbert's written confession and other inculpatory statements (Claim A) and failure to request jury instructions on the lesser included offenses of second degree murder and manslaughter and failed to argue alternative defenses (claim B), should be dismissed. The Virginia Circuit Court of Loudoun County's dismissal of Ms. Schwartz's claims was neither contrary to, nor an unreasonable application of *Strickland* nor was it based on an unreasonable determination of facts. The Virginia Circuit Court of Loudoun County did not apply federal law unreasonably because challenging defense counsel's tactical decisions is not a basis to grant habeas corpus under *Tompa v. Virginia*[2].

To establish ineffective assistance of counsel, a petitioner must show (1) that "counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's

---

[2] *Tompa v. Virginia*, 331 F.2d 552 (4th Cir. 1964).

representation fell below an objective standard of reasonableness." *Id.* at 688.  Thus, a petitioner must prove that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance." *Id.* at 690.  Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Furthermore, even if counsel committed some error, including a "professionally unreasonable" error, the judgment may only be set aside if the error had an actual effect on the judgment. *Id.* at 691.  Thus, for a court to find counsel's performance constituted ineffective assistance, "any deficiencies in counsel's performance must be prejudicial to the defense...." *Id.* at 692.  It is not enough for a petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome". *Id.*

14

Ultimately, "failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700. A successful petition must show both, as they are "separate and distinct elements" of the claim. *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). Moreover, a court does not need to review the reasonableness of counsel's performance if a petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998).

*i. Claim A*

Ms. Schwartz writ for petition of habeas corpus based upon the argument of ineffective assistance of counsel because trial counsel failed to timely and properly object to the introduction into evidence Mr. Hulbert's written confession and other inculpatory statements is denied because the action complained of constitute legitimate trial tactics by defense counsel. *Tompa v. Virginia*, 331 F.2d 552, 554 (4th Cir. 1964). In Claim A, Ms. Schwartz argues that trial counsel was ineffective because counsel failed to timely and properly object to the introduction of Mr. Hulbert's written confession and other inculpatory statements into evidence. (F. Habeas Pet. 12-13.) Specifically, the statements in Ms. Inglis' testimony that Mr. Hulbert said, "I ran him through." (Trial Tr. 345.)

"You're father is dead, and I did it." (Trial Tr. 351.)
In addition, all other statements made by Ms. Schwartz as
to what Mr. Hulbert said. Ms. Schwartz claims hinges on
the fact that defense counsel could have objected to the
inclusion of Mr. Hulbert's confession under *Lilly v.
Virginia*. *Lilly*, stands for the proposition that a
nontestifying accomplice offering statements against the
penal interest of the defendant must be allowed to be
confronted by the defendant pursuant to the confrontation
clause of the 6th Amendment. *Lilly v. Virginia*, 527 U.S.
116, 139-140 (1999). Ms. Schwartz alleges that without the
written confession and other inculpatory statements, the
jury would have had a much more difficult time convicting
Ms. Schwartz as an accessory or co-conspirator. (F. Habeas
Pet 14.) Ms. Schwartz further argues that counsel's
decision to stipulate to the inclusion of the confession
was unreasonable because the only portions of the
confession used by the defense were the apology to Ms.
Schwartz and the statement that one day Mr. Hulbert hoped
that Ms. Schwartz would see the logic in what he did. (*Id.*
at 15.)

   The Circuit Court of Loudoun County held that this
claim satisfied neither the performance nor the prejudice

prong of the *Strickland* test, because Ms. Schwartz's withdrawal of the objection to the admission of Mr. Hulbert's confession, "assisted in showing... what the state of his mental state was [sic], as the defendant wanted to challenge Mr. Hulbert's ability to understand and process what the defendant was, in essence, saying." *Schwartz v. Johnson*, Rec. No. 081416 at 87-88 (Va. Cir. Ct. Mar. 14, 2008).  The circuit court determined that this was clearly a trial strategy as evidenced by the 12-page briefing by defense counsel on the exclusion of the written confession.  This memorandum demonstrates that counsel weighed the consequences of the admission of Mr. Hulbert's unredacted confession and made a strategic choice for its inclusion to further support their defense.  The circuit court concluded that Mr. Hulbert's written confession was a strategy adopted by the defense to further their argument that Mr. Hulbert was a psychotic individual who acted unilaterally in killing Dr. Schwartz and that Ms. Schwartz did not urge Mr. Hulbert to kill her father or participate in the murder.  *Schwartz v. Johnson*, R. No. 081416 at 87. This is evidenced by the fact that defense argued for jury instruction 14A that stated, if the jury had a reasonable doubt that Mr. Hulbert had the "mental capacity to understand the nature and consequences of any agreement to

17

commit a crime at the time of the agreement," the jury must acquit Ms. Schwartz of the conspiracy.  The defense used portions of the confession, such as where Mr. Hulbert describes visions of killing Dr. Schwartz; where he lost control when he got Dr. Schwartz blood in his mouth; and that he heard voices; to further demonstrate that Mr. Hulbert lacked the mental capacity to understand the consequences of his crime.  (Mr. Hulbert Confession 2, 5, 7.)

Furthermore, the Circuit Court concluded that even without the written confession, "with respect to the prejudice prong... there is adequate evidence of record, that it could have led a reasonable jury to conclude that Mr. Hulbert was the perpetrator."  *Id*.  This is evidenced by the testimony of witnesses stating that Mr. Hulbert told them , "I ran him through."  (Trial Tr. 345.)  "You're father is dead, and I did it."  (Trial Tr. 351.)."  In addition the sword found on Mr. Hulbert's person at the time of his arrest was consistent with the wounds inflicted upon Dr. Schwartz.  Such a determination is not contrary to nor an unreasonable application of *Strickland*.  Thus, Claim A of the instant petition is denied because under *Tompa* mistakes in judgment or trial tactics of defense counsel do

not deprive the accused of a constitutional right and do
not entitle that person to a writ of habeas corpus.

ii. Claim B

Ms. Schwartz writ for petition of habeas corpus upon
the argument of ineffective assistance of counsel because
her trial counsel failed to request jury instructions on
the lesser included offenses of second degree murder and
manslaughter and failed to argue alternative defenses is
denied.  Arguments based upon mistakes in trial tactics by
defense counsel do not deprive defendant of a
constitutional right and do not entitle her to a writ of
habeas corpus.  *Tompa* 331 F.2d at 554.  (*See supra* at 14.)

In Claim B, Ms. Schwartz alleges that trial counsel
was ineffective because counsel failed to request a jury
instruction for lesser included offenses, including second
degree murder and manslaughter, and for failing to argue
that Mr. Hulbert's claimed details of the events cast doubt
on the conspiracy and solicitation charges that defense
counsel could have used to cast doubt on those charges.
(F. Habeas Pet. 18-19.)  Ms. Schwartz argues that there is
a reasonable probability that the jury would have found her
guilty of lesser included offenses of first degree murder
had the jury instructions been provided.  (*Id.* at 19.)

The Virginia Circuit Court of Loudoun County dismissed

19

Ms. Schwartz claim, finding that it did not satisfy the
performance prong of *Strickland* and declined to reach the
prejudice prong because the circuit court concluded that it
was reasonable trial strategy not to confuse the jurors
with alternative conflicting defenses. *Schwartz*, Rec. No.
081416 at 89-91 (Va. Cir. Ct. Mar. 14, 2008). The state
habeas court concluded that the trial strategy of Ms.
Schwartz was that Mr. Hulbert committed the murder on his
own, due to his misunderstanding of what Ms. Schwartz asked
him to do and because of his own unilateral psychotic
actions. *Schwartz v. Johnson*, R. No. 081416 at 87. The
court found that by presenting the jury with instructions
on lesser included offenses, it would undermine the
defense's strategy by in effect saying that, "She [Ms.
Schwartz] had nothing to do with the murder... but if you
don't believe that then she really only agreed that he [Mr.
Hulbert] would go over there and confront." *Id.* The court
concluded that certain portions of the lesser included
offenses would be inconsistent with Ms. Schwartz's defense
and therefore counsel's decision not to argue for jury
instructions on the lesser included offenses of second
degree murder and manslaughter does not show a lack of
performance that meets the *Strickland* test. *Id.* Thus,
Claim B of the instant petition is denied because under

20

*Tompa* mistakes in judgment or trial tactics of defense counsel do not deprive the accused of a constitutional right and do not entitle that person to a writ of habeas corpus.

## III. CONCLUSION

The Court dismisses Ms. Schwartz's Federal Habeas Petition for Writ of Habeas Corpus for Prisoner in State Custody because the state court's denial of her claims was not contrary to, or an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts. Ms. Schwartz has failed to demonstrate that her trial counsel was ineffective under the *Strickland* standard and the Virginia Circuit Court of Loudoun County did not apply the standard unreasonably nor did it base its decision on an unreasonable determination of the facts. Defense counsel's trial tactics cannot form a basis for a habeas petition. There is no constitutional violation of Ms. Schwartz's rights in the Virginia Circuit Court of Loudoun County to give rise to a writ of petition of habeas corpus in this Court.

For the foregoing reasons, it is hereby

ORDERED that the Petitioner Ms. Clara Jane Schwartz's Motion for Petition for Writ of Habeas Corpus For Prisoner in State Custody pursuant to 28 U.S.C. § 2254 is DENIED.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this _3rd_ of August, 2009

_____/s/_____
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia

8/ 3 /09